Good morning, Your Honors. May it please the Court, my name is Kimberly Brunson and I represent the appellant in this matter. With the Court's permission, I'd like to reserve three minutes for rebuttal. Granted. Thank you. Your Honors, there are two issues in particular I would like to address before the Court today. One is the admission of evidence regarding Mr. Brown's previous purchase six years prior of certain weapons using a straw purchaser under Rule 404B, and the other is the prosecutor's statements during rebuttal closing. I would submit that each of these admissions, the District Court made a reversible error with regard to both these individually and certainly cumulatively. It deprived Mr. Brown of a fair trial and warrants conviction to be vacated and no matter, remanded for a new trial. So we have another 404B issue, but not exactly, in fact not at all, like the previous oral argument which you were probably present to hear. This is not Casey Stengel like Deja Do all over again. This is a different 404B matter in which, as I understand it, and help is suggesting and was suggesting that Mr. Brown's girlfriend, whose gun this is alleged to have been, or you maintain, this gun was registered to her, she had obtained a permit sometime before, that somehow, as I understand the theory, because Mr. Brown has a conviction of using straw purchasers, she must have been a straw purchaser here. Is that effective in the argument? In substance, yes, Your Honor. What happened was Did the government present any evidence in its case-in-chief that she had engaged in nonviolence? No, Your Honor. The government's case-in-chief consisted of the testimony of the four arresting officers that night, on the night in question. Each of whom testified, they saw the defendant make furtive movements or movements that were consistent with someone removing an object from their waistband and putting that object underneath the driver's seat of the vehicle. So we again, in this case, as in the previous case, do have an issue of actual possession. That is, if you believe the police officer's testimony, then what he had in his, what they saw in his hand, or what must have been in his hand, was the gun later found. Correct, Your Honor. Through circumstantial evidence, the government was attempting to prove actual possession. In fact, one of the officers, the officer who was driving the vehicle that night, testified that he saw an object, although he could not identify it as a gun, an object in Mr. Brown's hand when he pulled something out of his waistband, and that object was no longer in his hand when he moved back up from having leaned over into, toward the driver's seat area. So the government was clearly trying to, as a matter of fact, in closing, the prosecutor argued, you know, to the jury, if you believe even one of these officers, you have to convict, because the only object found under the seat that day was, or that evening, rather, was the weapon in question. But that weapon was below the seat in which he was seated, and according to the testimony, a portion of that firearm was visible to those outside the car. But that's what the officers testified to, correct. Right, and therefore the inference is, the person who was sitting in the seat would have been able to see it too. Well, the inference was that they actually saw Mr. Brown remove it from his waistband and put it underneath the seat. Some of the officers testified to that, yes. Yeah, that was the government's theory of the case. Their theory went further, in that Mr. Brown had this, actually owned this weapon, in a sense, because he had his girlfriend buy it for him. And why isn't that a fair inference from the facts, that somebody had a very close relationship with, someone who, according to the record, didn't have familiarity with firearms, someone who, according to the record, although had a permit for a year or two before, didn't obtain the weapon until shortly after his release? Why wouldn't that be a fair inference to draw in the links to support, unlike the discussion that we just had before, the chain of inferences here a little clearer? Well, it's certainly a fair inference, and it certainly was fair for the government to make that to the jury. It's a fair inference. Actually, I should say, it's a fair argument for the government to make to the jury, because not during their case in chief, but after Ms. McCoy testified, the government cross-examined her, questioned her about the timing of the purchase of the weapon, her familiarity with it, things of that nature, which certainly didn't just positively show in any way that she didn't buy the weapon for her own use or for the purposes she said, but did call into question somewhat her testimony. But the government, I would submit, the government just bolstered that theory by allowing, by requesting in the court, allowing to evidence the stipulation of objection by defense counsel that he had admitted to using straw purchasers in the past. And this court, I think, needs to look at- What was the proffer before the district court? What was the government's proffer for this evidence? Well, the government wanted to put- Now, what did the government say? What was its proffer? During the pretrial conference, the government, the government submitted that- That the evidence was relevant to show that he did have the knowledge that there was a firearm in his car and that he knows what firearms are, right? Correct. Now, there really isn't any doubt he knows what firearms are, whether anybody in this society knows what firearms are, right? Correct. And if that is a properly admissible purpose, then every time someone with a firearm conviction in his or her past has a case of possession of a firearm, you're going to get that record in, right? Certainly. So, what about the other prong of his proffer? Knowledge that there was a firearm in his car. What did the government show, a la Sampson, by way of a chain of inferences that no one of which can be that of propensity, that because Mr. Brown had used straw purchasers in the past, he must have used a straw purchaser here. Your Honor, I've read the entire record and I've not found any articulation of any link, any chain of inferences at all. In fact- Well, certainly not in the government's case, right? No. What about the district court, Your Honor? I mean, the district court's rationale was, well, Mr. Brown is denying having Ms. McCoy purchased that weapon through her testimony, so it's relevant and we'll let it in. That happened during the pretrial conference. But, you know, I would submit also this purchase took place six years prior to the night in question. Mr. Brown admitted to having purchased firearms sometime prior to January of 2005 for purposes of reselling them on the street. There were a number of weapons that were sold to ATF agents and several of those were retrieved by Mr. Brown as part of a prior ATF investigation. There's no way I've been able to figure out how Mr. Brown's purchase of firearms in 2005 or prior to 2005 had any bearing on his knowledge of a weapon under the seat that was purchased by someone else and there's been no evidence that Ms. McCoy had engaged in any sort of You've already used the word, but what you're suggesting is that the government's speculating about this, but that they never actually put any affirmative evidence in that what she had done was engaged in a straw purchase. That's correct. Yes, and they're asking the jury, really, to conclude that because Mr. Brown had used a straw purchaser in 2005 that he must have done it again. I mean, I would ask the court to, you know, I think the Miller case that was cited in my 28J letter yesterday has a good suggestion and it says confusion and misuse of Rule 404B can be avoided by asking the prosecution exactly how the proffered evidence should work in the mind of the juror to establish the fact the government claims to be trying to prove. Ms. Brunson, we've talked so far about the government's proffer. What was the district court's ruling? What did the district court say when it allowed this evidence? The district court said, Your Honor, that It was admissible for what? He has knowledge, well, she said it's part of the theory, this is from the appendix pages It's part of the theory of the case that she was not a straw purchaser. What does she say at page 390? 390? He's denying through her testimony that she was a straw purchaser. What is her basis for her ruling? What does she allow the evidence to be admissible for? Motive or knowledge. Doesn't she say to show motive? Or knowledge. Or knowledge. And that type of thing along those lines. Exactly. What does that mean? I do not know. Again, unless the jury finds that he again used a straw purchaser. Was motive ever part of the proffer by the government? Motive? No. The district court rules motive. The government never proffered on the basis of motive, right? Correct. The government did proffer on the basis of knowledge. Correct. All right. I mean, Your Honor, I would submit the record just doesn't show any... It's kind of a broad ruling, isn't it? It just parrots the words of the rule. Well, that type of thing along those lines doesn't appear anywhere in 404B. It's broader than 404B, yes. For simply, I think that, I would submit, and I'm speculating, but it appears as though, you know, certainly the evidence is relevant in the sense of all propensity evidence is relevant. All propensity evidence is relevant theoretically, but we have, since common law times, ruled it out on policy grounds, and hence you have the codification that came about in Rule 404 of the Federal Rules of Evidence back in the 70s. Yes, it's logically relevant, but we draw a line here, and we do not allow propensity evidence. In fact, our own cases have been a little bit confusing sometimes in referring to a rule of inclusion. 404 is not a rule of inclusion. It's a rule of exclusion subject to what B says, which tells you what can be included. Yes, Your Honor, I would agree with that. Can we talk harmlessness for a second? Can we talk about harmlessness? Certainly, Your Honor. In this situation, we know what was testified to have been observed. We know where the gun was found. We know where the defendant was seated. And we also know it was a one-sentence stipulation that really wasn't a lot argued about in the government's summation. So why isn't this harmless, even if it were erroneously admitted? Well, this Court must be highly probable that the error did not contribute to the judgment. And I would submit in this case, this is a case in which the government had its cake and ate it too. It argued actual possession. There are four officers saying, we saw the defendant with this particular weapon, so I can believe any of them. Case is over. He possessed it. He put it under the seat. That was the only thing under the seat. On the other hand, should you not believe the officers, then we're left with constructive possession. Sort of. And in that sense, it did come down to he said, she said. Mr. Brown's passenger that day testified that he didn't see anything. The officer's credibility was questioned somewhat during cross-examination. It really came down to what the jury believed. And by allowing this prior evidence that, or the stipulation that he had previously used to offer purchasers, we just can't be left with the short conviction that had the jury had some questions whether or not he actually, Mr. Brown, had that weapon that night, that that didn't tip the scales in favor of the government. You know, well, it belonged to his girlfriend. She purchased it. He had a relationship with her at the time. This Court just cannot, I would submit, conclude that it did not affect the jury's verdict. Thank you. Thank you. We'll have you back on rebuttal in response. Thank you. Ms. Haywood. Good morning. May it please the Court, Rebecca Haywood here on behalf of the United States. And I guess I'm going to be talking about what 4 will be. It seems to be the order of the day. What was the government's proffer here? Certainly. The government's proffer, as noted on pages 386 to 390 in the record, was that the evidence was relevant to show intent, knowledge, and actually, implicitly, a lack of mistake. And that's what I would like to talk about in terms of although the Court So implicit, it was never explicitly articulated. Not until later in the record, actually. Not until it was the time where the government was talking about wanting to offer it in its case in chief. And the Court was very clear it wanted this just in rebuttal, just in response to if Ms. McCoy took the stand and testified that this was her gun and that she left it in the car accidentally, that the government should, in fair response to that type of argument in rebuttal, be able to note that the defendant had used straw purchasers in the past. And I want to talk about, too, the government's The government never put in any evidence at all in its case in chief  You're correct. That is correct, Your Honor. But in cross-examination of Ms. McCoy, it's very clear that the government's position was that she bought this gun for Mr. Brown. That's what you are arguing, but where is there any evidence of that? Obviously, it has to be circumstantial. So what's the circumstantial evidence that she purchased this for and at the direction of Mr. Brown? Well, there's evidence that she purchased a gun in terms of We weren't allowed to get into evidence that he was actually Well, let's talk about the evidence that is in the record. The evidence in the record in rebuttal was that someone had talked to her in 2010 and she denied possessing the gun. Even though at that point in time she owned the weapon, it was the probation officer who talked to her. So it could be anybody. Why does that? That sounds like a nullity. That doesn't sound to me like anything that points to Mr. Brown. It just impeaches her. Well, it's also circumstantial evidence that she was unfamiliar with the gun, unfamiliar with the type of ammunition. Her story that she carried this gun all the time and only went to fire it one time for protection. That's circumstantial evidence that she is not really the owner of the gun. Well, fair enough, but why does disbelieving her, why does impeaching her, why does undermining her testimony have to point to Mr. Brown? Well, there was also evidence that they had a relationship. There was evidence of a tattoo on Mr. Brown that he had a tattoo of her name. Was there any evidence at all, any evidence at all, suggesting that the two, in the course of their relationship, had together possessed guns, had ever used guns together? Was there any suggestion at all, any evidence of a gun or guns in the relationship between these two people, either in your case in chief or in your cross-examination of her? Well, he is found in possession in a car of a gun that is licensed to her. So it's the government's position that that is certainly very strong circumstantial evidence of the relationship between, in light of their relationship as boyfriend and girlfriend, in light of the relationship between the two and the gun. And whose car was it? It was a friend of hers. Right. It was not her car, which he was driving. So to suggest that she left this car accidentally, the gun accidentally in the front seat, it's a gun of which she is not familiar and a gun which she buys but yet is not familiar. And in light of their existing relationship, that is circumstantial evidence by which a jury could find that she was indeed a purchaser of the gun for Mr. Brown. And I turn to the issue of actual versus constructive possession also. The jury was charged on constructive possession. None of the officers specifically said they actually saw him with a gun in their hands. One said the driver of the vehicle, Detective Kennedy, said, I thought that could be it. But the gun was found protruding from under the front seat of a vehicle and that she is found. Are you suggesting that this is not or could not be actual possession, that the evidence doesn't support actual possession? Absolutely not. But I'm suggesting it could be either. Sure. I agree with that. And in that type of case, then you do get to the cases which numerous circuit courts have found that in constructive possession cases, this type of evidence... You don't have to get to constructive possession if your evidence is sufficient to show actual possession. And your evidence has officers observing movements of someone with something in his hand and the something that is found being a gun obviously gives rise to a reasonable inference that what he had in his possession was a gun. That's actual possession. Certainly, Your Honor. But we have the highest level of proof that there is beyond a reasonable doubt. And the government should be able to offer evidence consistent with that. And in this particular case, you know, there's been a lot of discussion here about what the rule would be. There's no doubt it can be confusing. There's no doubt that these are very fine distinctions. But there also is no doubt that this rule is about admissibility of evidence for an improper purpose. There's also no doubt that the prosecution, the government, a DA, a federal prosecutor wants to get that prior record into the record and in front of that jury. No doubt whatsoever. Which is why 404B in the process that we've tried to assure is a disciplined one and requires the prosecution to come forward with proper reasons plus a theory consistent with our Sampson holding that requires the prosecutor to set forth a chain of inferences, no one of which can be a suggestion of propensity. What was the chain of inferences here that the government set out in its property? The chain of inferences of this defendant, the government has to put knowledge and then... Not how you're arguing it right now. What chain of inferences were set out for the district court at trial? As you write when you're speaking with Ms. Bronson, the government talked about knowledge and intent and also, as I noted, when we were talking about getting the information in rebuttal, there was clearly a discussion about this being relevant to a claim of lack of accidental or mistaken possession in this case. The government set forth those inferences. Now, I cannot dispute the record in this case. I can't dispute that what the district court said in this case was vague. But you have to look at her. The district court judge, when she was talking about only letting this evidence come in through rebuttal, it's very clear that she is imagining this is coming in in response to a very specific defense that was made here, that this gun was left by a girlfriend, a gun in which the girlfriend has very little experience in exposure and clearly can't testify about. When she heard that, that's only after that evidence came in, that this very brief one-sentence stipulation that read, the defendant acknowledges using child purchasers, third parties to purchase firearms for him in the past. That is the only time that this evidence was mentioned. It was not mentioned by the government in closing. That is the only evidence we provide to this court when it came in. And I know there was some briefing about the question of eliminating instruction. There was a request for eliminating instruction whenever the evidence seemed like it might come in through the ATF agents. And I know that there was a prior conviction. What there was was Mr. Brown was interviewed by ATF agents, and he made these admissions. So the government had been intending and wanting to offer the fact that there were 12 guns that he admitted to having used child purchasers to obtain. But that was not what happened. And this came in through this very brief one-sentence stipulation. Ms. Brunson did not get a great deal of time to talk about harmless error here, but the harmless error argument has to take into account suggestions of several errors by the district court, or errors by the district court and the prosecutor here, right? She mentioned two. Yes, the summation is the other. Correct. Officer, I'm going to turn to the summation. Would you please? Because I'm having a hard time seeing how the prosecutor did anything other than offer his own expert testimony in the course of the objections that were interposed. I think it's very important to look at what the prosecutor said in this case in context. Throughout the trial, there was nothing, no cross-examination of any of the detectives about whether or not they tried to get fingerprint evidence, whether or not it was possible based on the type of firearm involved. And if you look at what the defense counsel started by saying in his closing argument, he started by saying, I've read the entire transcript, and I have a hard time seeing how the concept of a micro-textured surface introduced for the first time into the record in summation is anything other than the invocation of an expert term, which is not within the realm of knowledge of any lay juror, or frankly, a lot of us. What I'd like to point out is that the defense counsel stated that none of us would have been here today if there had been fingerprint analysis, because it would show what you already know, that Mr. Brown never possessed that gun or ammunition. That is what the prosecutor is saying. So you're suggesting invited error? Is that what you're saying? I'm not suggesting error at all. I'm suggesting that there was a fair response to a claim that if there had been an expert, that's what the defense counsel said. Sometimes it's easier to just say, yeah, he shouldn't have done it, but it's not harmless. How in the world you can suggest here that the prosecutor simply could have said, we just didn't offer an expert, but we stand on the evidence that we've presented. But he didn't say that.  And in fact, one of the objections was sustained, wasn't it? The one objection that was sustained to the government started at the closing by saying he could have called an expert. That objection was sustained. And frankly, though, I would note that there have been numerous cases that have said that it is fair for the government when the defense counsel talks about lack of evidence. It's fair for the government to say, well, there's an equal opportunity to present evidence. Well, we don't have such a case, but the Second Circuit does, and they have said exactly the opposite. They've said what occurred here is not proper. That is not an invitation, then, for the government to go forward and offer its own expert testimony. You do not think that it was improper to suggest a connection or similarity between smudges and fingerprints on glass or a table, as opposed to smudges and fingerprints on a gun or a microtextured surface? The government's attorney is simply drawing on the juror's common experiences in terms of what you see when you see on a glass table. Is it a common experience that fingerprints on a table are essentially the same thing as fingerprints on a gun or a microtextured surface? That's the inference that has to be drawn. The statement was that it's possible that there are smudges and smears on a glass table. And then there was another objection. And sidebar, the district court judge said, please, you can't testify. You're getting close to testifying. Don't do it. And when he went back, she asked the prosecutor to rephrase. And at that point in time, the prosecutor went on to just note that with our experiences, you can see how there are some smudges and smears. But doesn't government usually have to call an expert to testify about what's really left or not left on an object? Otherwise, you'd never need experts. Isn't this beyond asking somebody to draw on their common sense, especially where some of the argument was officer cleared the firearm to render it safe. Therefore, he must have removed fingerprints that might have been left by the person in possession. Aren't we then treading into an area where we're rendering not only maybe factual information, but maybe things even beyond the ability of an individual to testify to, because experts have to be called on these subjects all the time. And what happened here was the issue about fingerprints was raised for the very first time in defense closing. And this was a response to it. And I'm certainly not suggesting that it's okay for a prosecutor to testify. I'm not suggesting that at all. But what I'm saying here is that when read in context of what the prosecutor said here, he was attempting to have an evidence that responded to the defense argument that the government never presented any fingerprint evidence. Exactly. But he was testifying. Well, he was attempting to talk about what people would understand and think about in terms of fingerprints. So even if he did that, even if that was it, with regard to whether or not this court finds that was testifying or not, when you get to the question of whether or not those limited statements should require a reversal and a conviction in that case, that's a very different question. And I think this segues back to what Judge Smith was asking about. If we were to view the admission of the 404B evidence and the statements as being improper, how can we say it's still nonetheless harmless? I don't know that this was briefed as a Keeneland-Berr case, but regardless of that, with regard to the 404B, there was simply that one statement, again, that wasn't mentioned, often offered in rebuttal, offered in response to a very specific defense in this case, as well as the fact that here in terms of the closing argument made here in rebuttal, it was simply very brief few statements regarding fingerprint evidence that was never addressed, you know, that was raised by the defendant. And in light of the evidence in this case, which was in the government's mind overwhelming in terms of four officers seeing this defendant reach down, in light of the fact the gun was found right underneath the defendant's feet, the strength of the government's evidence would support a fine in parliaments, even if both of those were found to be errant. Ms. Haywood, all the way back in 1976, the Second Circuit said in a case, United States v. Rubinson, and this is the case I referred to a short while ago without naming it. Here's what it said. While the prosecution in rebuttal may respond to the interpretation which the defense has placed on its failure to present evidence, it may not use the defense's comments to justify the reference to facts or the assertion of claims which it could have but did not introduce at trial. Isn't that exactly what happened here? Your Honor, again, it's my position that he wasn't really talking about facts. He was saying that, George, you understand in your nature when you are looking at a glass table what kind of fingerprints are going to be there. It's just a difficult thing to get fingerprints. I don't think we're going to make any more progress on this one. And the red light is on. So we thank you very much. Thank you, Your Honor. Ms. Haywood. Thank you. Ms. Johnson, I think you have the floor. Thank you, Your Honor. Very briefly, Ms. Haywood herself I think shows why the stipulation was not probative for a proper purpose. She talked a bit about the evidence that the government put forth. Circumstantial evidence which would show that Ms. McCord was not in fact the purchaser, which was the government's theory, of course, not the defense denied that. But the fact that the government was able to attack her testimony, so the stipulation Why isn't the fact that he had acknowledged engaging in straw purchases before probative of the question of whether he knew the gun was in the car? Because there's the only way to link that fact that he had purchased weapons through a third party six years prior to his knowledge underneath the seat, given the government's case, is to ask the jury to assume that because he did it before, he did it again. There is no evidence that Brittany McCoy had been engaged in possession of weapons with him, that she had engaged in straw purchases with any other party. This is not part of the intrinsic evidence of the crime, such as there was an unpublished Third Circuit case, Heinsohn, I believe it was, where there was evidence of one of the weapons in that case was actually the subject of the straw purchaser prior bad act. That's not the case, and these were completely different weapons. The time was significant. The time difference, again, there's no similarity between the parties involved. Or even, I would submit, the purpose. In the government's brief, they put forth all the facts, and in fact, those weapons that were purchased through a third party were bought with heroin. Someone that was very, very factually dissimilar than the case the government was trying to make here. And I would submit the only link between the stipulation and the government's case is to ask the jury to find he acted in conformity with his past behavior. Ms. Brunson, on the other issue, the closing argument issue, while if the government made an error, this would be no condemnation of it, but in fact, defense counsel, while not inviting it, essentially did the same thing. Didn't you? I mean, didn't... Well, you know, Your Honor, the reform... Went so far as to say they didn't call an expert. They didn't bring a fingerprint. So far, so good. That's fine. But then the next statement was, and we know why, because if they had, you know, we wouldn't be here if they had because we know what the expert would have said. Isn't that expert testimony? Didn't the defense do the same thing? They're now pointing the finger at the government for that? Well, I think the government... Certainly, defense counsel was permitted to show there were holes in the government's evidence. And the government's evidence was... Isn't the answer really given the government didn't object? Yes, Your Honor. The government did not object. But even more so, Your Honor, there's no question that the prosecutor was testifying here. The district court even said so. The district court did not say you're getting close to testifying. The district court said, be careful, you are testifying. And not only are you testifying, you are testifying incorrectly. Yet inexplicably, the district court did not sustain the objection. The district court allowed the prosecutor to continue with that line of argument, just warning him to be vague. And the jury was never given any sort of curative instruction or any instruction at all that they should not, beside the general instruction that the argument of counsel is not evidence. And there have been two cases at least... Was there a request for curative instruction? No, Your Honor, because the objection was overruled. So it's hard to believe that the district court would cure something she didn't believe was error in the first instance. Thank you. Thank you, Your Honor. I would ask that the conviction be vacated. Thank you, Ms. Brunson, Ms. Haywood. We thank both sides for their helpful arguments in an interesting case. Thank you for your advice.